UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
IBERIA FOODS CORP., et al.,

                *Plaintiffs*,        **Memorandum and Order**

      v.                   20-CV-3009(KAM)(RLM)

LATINFOOD U.S. CORP., et al.,

                *Defendants*.
--------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        The plaintiffs in this trademark infringement action voluntarily dismissed the case pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  The defendants thereafter filed a motion to recover their costs, including attorneys' fees, pursuant to Federal Rule of Civil Procedure 41(d)(1), and asserting the plaintiffs' purported bad faith in pursuing their claims.  The plaintiffs filed a cross-motion for attorneys' fees and costs, asserting the defendants' purported bad faith.  For the reasons herein, the defendants' motion is DENIED, and the plaintiffs' motion is DENIED.

## Background

        This case was initiated July 7, 2020 by four plaintiffs: Iberia Foods Corporation ("Iberia"); North Shore Bottling Company, Inc.; Brooklyn Bottling of Milton, New York, Inc.; and International World Foods Corporation (collectively, "Plaintiffs").  (*See generally* ECF No. 1, Complaint.)

Plaintiffs named three defendants: Latinfood U.S. Corporation ("Latinfood"); J. Wilson International, Inc.; and Wilson Zuluaga. (*Id.*)  The parties subsequently stipulated to J. Wilson International, Inc.'s dismissal (ECF No. 26, Stipulation and Order of Partial Dismissal), leaving Latinfood and Wilson Zulaga and the only remaining defendants (together, "Defendants").

Plaintiffs alleged that Iberia had an exclusive agreement with Bavaria, S.A. ("Bavaria"), a corporation based in Colombia that is not a party in this action, to distribute Bavaria's Pony Malta brand beverages in certain states in the United States. (ECF No. 30, Amended Complaint ("Am. Compl."), ¶ 16.)[1]  Pony Malta beverages are non-alcoholic carbonated beverages that are manufactured in Colombia, and they are popular with the Colombian community in the United States. (*Id.* ¶¶ 16-17, 23.)  Bavaria obtained United States trademarks for the Pony Malta brand in 1990 and in 2011. (*Id.* ¶¶ 24-26.)  At some point thereafter, the trademarks were canceled, although Pony Malta products were still sold in the United States. (*Id.* ¶¶ 28-29.)

---

[1] Plaintiffs originally also brought claims based on beverages bearing the HIT trademark, but those claims were subsequently settled (ECF No. 19, Order of Partial Settlement), and Plaintiffs filed an amended complaint focused solely on the Pony Malta brand.

Plaintiffs alleged that despite their exclusive agreement with Bavaria to sell Pony Malta beverages in certain parts of the United States, Defendants engaged in the unauthorized sale of Pony Malta beverages within the same territory. (*Id.* ¶¶ 38-39.)  According to Plaintiffs, the Pony Malta versions sold by Defendants were allegedly "gray market goods": goods authorized for sale outside the United States that were being sold in the United States without authorization from the manufacturer. (*Id.* ¶ 43.)

Upon filing their complaint in July 2020, which brought claims for alleged violations of the federal Lanham Act as well as state law claims, Plaintiffs sought an *ex parte* temporary restraining order to prohibit Defendants from selling the alleged gray market beverages. (ECF No. 3, Unsigned Order to Show Cause.)  The court ordered Plaintiffs to serve the motion on defense counsel, and the next day, the court held a hearing, with both parties present by telephone, to hear argument on the proposed temporary restraining order. (*See* July 8, 2020 ECF Minute Entry & Dkt. Order.)  Based on the representations made by Defendants' counsel during the hearing, including that Plaintiffs had previously brought similar claims against Defendants in New York State court, and issues regarding Plaintiffs' entitlement to injunctive relief, the court denied the motion for a temporary restraining order. (*Id.*)

3

Thereafter, Plaintiffs moved for a preliminary injunction, and Defendants indicated their intent to file a motion to dismiss the case. (*See* ECF No. 31, Declaration in Support of Preliminary Injunction; Oct. 30, 2020 ECF Dkt. Order.) While the motion for a preliminary injunction was pending, and before the motion to dismiss was filed, Plaintiffs notified the court that Defendants "provided [Plaintiffs' counsel] with an email chain which appeared to indicate that persons unknown at Bavaria were working directly [with Defendants] to sell the [allegedly gray market Pony Malta beverages] for distribution in the" states where Plaintiffs claimed to have the exclusive right to sell Pony Malta beverages. (ECF No. 42, Letter, at 2.) Based on this new information, Plaintiffs voluntarily dismissed the case pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (ECF No. 44, Notice of Voluntary Dismissal.)

Following Plaintiffs' voluntary dismissal, Defendants moved for attorneys' fees and costs against Plaintiffs. (ECF No. 48, Motion for Attorneys' Fees; *see* ECF No. 48-1, Memorandum in Support ("Def. Mem."); ECF No. 53, Reply in Support ("Def. Reply").) Plaintiffs filed a cross-motion for attorneys' fees and costs. (ECF No. 50, Cross Motion for Attorneys' Fees; *see* ECF No. 51, Memorandum in Support ("Pl. Mem."); ECF No. 54, Reply in Support ("Pl. Reply").)

## Legal Standards

"If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court [] may order the plaintiff to pay all or part of the costs of that previous action[.]" Fed. R. Civ. P. 41(d)(1). Pursuant to this Rule, the Second Circuit has held that "a district court [is] free, in its discretion, to award attorneys' fees as part of costs." *Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 25 (2d Cir. 2018). The purpose of awarding a party costs and fees after the opposing party dismisses one action, only to bring a second one based on the same claims, is to "to serve as a deterrent to forum shopping and vexatious litigation." *Id.* (quoting *Andrews v. America's Living Centers, LLC*, 827 F.3d 306, 309 (4th Cir. 2016)).

When attorneys' fees are not explicitly authorized by a statute or rule (such as Rule 41(d)(1)), the traditional "'American Rule' is that the prevailing party in federal court litigation generally cannot recover attorneys' fees[.]" *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 344 (2d Cir. 1986). One exception to this traditional rule is that "the court does have the power to award attorneys' fees to a successful litigant when his opponent has commenced or conducted an action 'in bad faith, vexatiously, wantonly, or for

oppressive reasons.'" *Id.* (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129 (1974)). To qualify for this bad faith exception to the "American Rule," there must be "'clear evidence' that the challenged actions '[were] entirely without color and [were] taken for reasons of harassment or delay or for other improper purposes[.]'" *Id.* (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 80 (2d Cir. 1982)); *see also Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 195 (2d Cir. 2000) ("[W]here the decision to initiate or defend a lawsuit was meritless and made for improper purposes, a fee award may be proper.").

## Discussion

Defendants seek to recover approximately $30,000 they spent defending the first case Plaintiffs brought against them in New York state court, and $150,000 they spent defending this action in federal court, although Defendants did not submit contemporaneous time sheets supporting these fees. (*See* Def. Mem. at 1.) Plaintiffs seek to recover approximately $40,000 in fees spent on this case, based on Defendants' purported delay in turning over the document that ultimately persuaded Plaintiff to voluntarily dismiss the case. (*See* Pl. Mem. at 28, 30.) The court will address each of these requests for fees in turn.

I.   **Defendants' Motion for Attorneys' Fees for the First State Court Action**

Defendants seek the attorneys' fees and costs expended defending the first action Plaintiffs filed in state court, pursuant to Federal Rule of Civil Procedure 41(d), which permits a court to "order the plaintiff to pay all or part of the costs of th[e] previous action" where "a plaintiff who previously dismissed an action in any court files [a second] action based on or including the same claim against the same defendant[.]" Fed. R. Civ. P. 41(d)(1).  A court may award attorneys' fees as part of these "costs." *Horowitz*, 888 F.3d at 25.

First, Defendants' motion for attorneys' fees ignored this court's order to file the contemporaneous attorney time entries showing the hours worked and the fees billed by their attorneys.  It is well-settled that a "party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Here, Defendants apparently preferred to engage in a two-step process, in which the court would first determine their entitlement to an award of attorneys' fees, and then would make a separate determination as to the amount of fees.  (*See* Def. Reply at 18-19.)  Such an approach would ordinarily be permissible; however, in this case, when setting a briefing schedule for the parties' cross-motions for attorneys' fees, the

7

court specifically directed that any "request for attorneys' fees and costs should be supported by contemporaneous time entries and documentation of costs[.]" (ECF Dkt. Order Dec. 18, 2020.) The purpose of having the parties submit this documentation in support of their respective motions was so that the court could immediately determine the reasonableness of the requested fees if the court determined that awarding fees was appropriate. Defendants ignored this Order.

Second, on the merits, the court declines to exercise its discretion to award Defendants attorneys' fees for the prior lawsuit, for the reasons that follow.

It is undisputed that, before this action was filed in this court in July 2020, Plaintiffs raised substantially similar allegations against one of the Defendants, Latinfood, by filing a complaint in February 2020 in Kings County Supreme Court in New York. (ECF No. 50-1, Declaration of Jeffrey C. Ruderman ("Ruderman Decl."), ¶¶ 2, 9.) Although the factual allegations in the first state court case were similar to those alleged in this case, the claims that were brought in state court were all state law claims. (*Id.* ¶ 9.) The state court complaint was served upon Latinfood on March 2, 2020, and shortly thereafter, the New York courts were closed due to the global COVID-19 pandemic. (*Id.* ¶ 10.) When the state court reopened in May 2020, Latinfood filed a motion to dismiss the complaint. (*Id.* ¶

8

11.)  On July 7, 2020, before the motion to dismiss had been decided, Plaintiffs filed a notice of discontinuance in the state court, and filed a new complaint (and a request for a temporary restraining order) in this court.  (*Id.* ¶¶ 19-20.) The complaint in this court asserted federal claims pursuant to the Lanham act (in addition to the same state law claims), and added additional Defendants.  (*Id.* ¶¶ 12-13.)

Defendants' argument in favor of attorneys' fees for the state court case focuses on the language of Rule 41(d)(1).  Defendants argue that this situation "falls squarely within the plain language of" the Rule, because Plaintiffs dismissed the state court case and then filed this case.  (Def. Mem. at 6.)  Defendants are correct that Rule 41(d)(1) applies to this situation.  However, the plain language of the Rule does not mandate an award of costs or attorneys' fees.  Rather, it provides that a court *may* award costs (including fees) for the first action, "in its discretion." *Horowitz*, 888 F.3d at 25. Attorneys' fees should be awarded "as a deterrent to forum shopping and vexatious litigation," and should target litigants who "file complaints and quickly dismiss them, perhaps in reaction to initial unfavorable rulings, or hoping for a subsequent case assignment to a judge they view as more favorable." *Id.* at 25-26.

Here, there is no indication that Plaintiffs' decision to discontinue the state court action in order to file in federal court was "forum shopping," either "in reaction to initial unfavorable rulings," or in the hope of a "more favorable" judicial assignment.  There were no decisions issued by the state court judge in the first action, unfavorable or otherwise.  The parties never appeared before the state court, and Latinfood's motion to dismiss was never decided.  (Ruderman Decl. ¶¶ 7-8.)  This case is thus readily distinguishable from *Horowitz*, a Second Circuit case upon which Defendants rely extensively.  In *Horowitz*, the Second Circuit affirmed the district court's award of attorneys' fees where the plaintiff had filed a second case in federal court shortly after the Georgia state court, which was hearing the plaintiff's first case, "denied the [plaintiff's request for a temporary restraining order] and at the same time suggested that [the plaintiff]'s filing of that [first] action interfered with [a separate] state action in New York in violation of that court's . . . order."  888 F.3d 13, 17–18.  Conversely, no such skepticism was ever expressed by the state court here that would have triggered Plaintiffs to forum shop.

Further, the decision to litigate in federal court appears to have been made following a good faith recognition that federal claims should be added to the complaint, based on

new information.  Plaintiffs' counsel has declared under penalty
of perjury that he only came to believe that Defendants were
selling gray market goods that originated with Bavaria (rather
than counterfeit goods) after Latinfood filed an affidavit in
support of its motion to dismiss in state court, which described
the process by which Latinfood obtained the Pony Malta beverages
it sold.  (Ruderman Decl. ¶¶ 11-12.)  This caused Plaintiffs'
counsel to want to add, *inter alia*, a claim pursuant to Section
43 of the Lanham Act, which provides a cause of action against a
person who sells goods using a "false designation of origin"
that "is likely to cause confusion . . . as to the origin,
sponsorship, or approval of [the] goods . . . ."  15 U.S.C. §
1125(a)(1)(A).  Though Plaintiffs could have brought their
Lanham Act claims in state court, Plaintiffs decided in good
faith that such claims were more properly heard in federal
court, because federal courts more regularly deal with Lanham
Act claims.  (Ruderman Decl. ¶ 16.)

     The court appreciates Defendants' frustration with
having to litigate in two separate forums.  In instances, not
appliable here, where it is shown that a plaintiff dismissed one
case in order to forum shop, seek an advantage, or drive up the
cost of litigation, the court would be inclined to grant fees to
the defendant.  However, there is no evidence of that in this
case.  Defendants have not pointed to any particular act of bad

faith by Plaintiffs, or any advantage that Plaintiffs were attempting to obtain by re-filing in federal court.  And, the prejudice to Defendants was likely minimal.  Although Latinfood expended resources on a motion to dismiss in state court, the work done on that motion was not wasted.  Defendants note that Plaintiffs' federal court complaint contained only "insignificant" changes as compared to their state court complaint (Def. Mem. at 8), which means that Defendants could likely have re-used much of their motion to dismiss in this case.  *See Pelczar v. Pelczar*, No. 16-cv-55 (CBA), 2017 WL 3105855, at *2 (E.D.N.Y. July 20, 2017) (Rule 41(d)(1) "has been interpreted in this Circuit to include payment of attorney's fees as 'compensation for work done in the first action that cannot be used in a second existing or contemplated action[.]'") (quoting *Hintergerger v. Catholic Health Sys.*, No. 08-cv-952 (WMS), 2012 WL 1965435, at *1 (W.D.N.Y. May 31, 2012)).

Accordingly, the court respectfully declines to exercise its discretion to award attorneys' fees and costs to Defendants for the state court action, because this court does not find that Plaintiffs were forum shopping or acting in bad faith when they chose to discontinue the state court action in order to file a complaint in federal court.

## II.   Defendants' Motion for Attorneys' Fees for the Instant Federal Action

Where a plaintiff files two similar cases, Rule 41(d)(1) only authorizes a court to award costs for the "previous action." Fed. R. Civ. P. 41(d)(1). Thus, in order for Defendants to recover fees for this second, federal action, they cannot rely on Rule 41(d)(1); rather, they must establish the exception to the general rule that each part bears its own costs, by showing "clear evidence" that this case was litigated "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Dow Chem. Pac. Ltd.*, 782 F.2d at 344.

Defendants argue that Plaintiffs' Lanham Act claims were brought in bad faith, because Plaintiffs did not have a registered trademark for the Pony Malta brand, and Plaintiffs were merely one of several distributors of the brand in the United States (as were Defendants, because Latinfood was a "longstanding, senior distributor" of the brand). (Def. Mem. at 11-12.) There is no "clear evidence," however, that Plaintiffs' claims were not, at least, colorable. On the contrary, Plaintiffs have provided evidence to demonstrate the basis of their claims: a distribution agreement between Plaintiffs and Bavaria, covering the time period from March 2019 through August 2021, which stated that Plaintiffs would acquire Pony Malta products from Bavria "in order to resell them exclusively in the

Territory of Florida – New York and New Jersey in USA . . . ."
(Ruderman Decl., Ex. 2, at 2.)

Defendants do not dispute that they were also selling
Pony Malta beverages in the territory over which Plaintiffs
believed they had an exclusive right.  Rather, Defendants argue
that Plaintiffs did not actually have an exclusive right,
because Defendants obtained the beverages they sold from Bavaria
(through a company called Two-Way Solutions), with the right to
sell them in the same territory. (*See* Def. Mem. at 11.)  But
the question now is not Defendants' liability; the question is
Plaintiffs' knowledge at the time Plaintiffs filed suit.  Based
on Plaintiffs' agreement with Bavaria, it was reasonable for
Plaintiffs to conclude that they had the exclusive right to sell
Pony Malta beverages in Florida, New York, and New Jersey.
Another entity selling gray market Pony Malta beverages in that
territory could have been, under circumstances that caused
confusion to consumers, liable under the Lanham Act.  *See Zino
Davidoff SA v. CVS Corp.*, 571 F.3d 238, 242 (2d Cir. 2009).

Defendants contend that they "repeatedly relayed" to
Plaintiffs their position that they were also authorized to sell
Pony Malta beverages in the same territory. (Def. Reply at 5.)
But the only evidence Defendants offer in support are emails
dated in October 2020, which is several months after Plaintiffs
filed this action in July 2020. (*See id.* at 4-5.)  Defendants

14

also seem to suggest that Plaintiffs should have dropped their case in response to the arguments made in Defendants' motion to dismiss (which was filed in state court), or in response to the motion to dismiss that was contemplated in this court.  Merely because a defendant has a viable legal defense does not mean the plaintiff's claims were brought in bad faith.  Any motion to dismiss would have been limited to Plaintiffs' allegations, and not evidence offered by Defendants.  And, again, the only evidence Defendants point to in support of their conclusory assertion that Plaintiffs' claims were brought in bad faith is evidence that was disclosed after Plaintiffs' second case was filed.  That evidence ultimately caused Plaintiffs to discontinue this action, but Defendants apparently failed to provide any evidence to Plaintiffs sooner than November 2020.[2]

Defendants also argue that Plaintiffs lacked standing to enforce any Pony Malta trademark rights, because Plaintiffs did not own the trademark, and the distribution agreement did not provide Plaintiffs the right to enforce the trademark.  (*See* Def. Mem. at 12.)  Upon a review of the distribution agreement, it appears that Defendants are correct that, although Plaintiffs could have reasonably believed they had an exclusive right to

---

[2] Defendants also argue that Plaintiffs' amended complaint was supported by "no evidence."  (Def. Reply at 7.)  A complaint need not be supported by evidence, only plausible allegations, as a plaintiff generally will not have access to evidence that is in a defendant's possession until the parties engage in discovery.

distribute the Pony Malta products, nothing in the agreement purported to give Plaintiffs the right to enforce Pony Malta's trademark rights.  (*See generally* Ruderman Decl., Ex. 2.) Plaintiffs counter that their claims were not for trademark infringement pursuant to Section 32 of the Lanham Act, but rather, were brought under Section 43 of the Lanham Act, which provides a cause of action for unfair competition related to goods with a "false designation of origin."  15 U.S.C. § 1125(a)(1).  Plaintiffs contend that their rights under Section 43 are broader, and there was no requirement that the they owned a registered trademark to bring suit.  (*See* Pl. Mem. at 21.)

Second Circuit case law interpreting the standing requirement for Section 43 claims appears to be somewhat sparse. What is clear, however, is that Plaintiffs' arguments with regard to standing are colorable, and it does not appear that their claims were brought in bad faith.  In support of their argument that they had standing to bring their claims pursuant to Section 43 of the Lanham Act, Plaintiffs rely on, *inter alia*, a case in which the First Circuit held that "one who may suffer adverse consequences from a violation of [Section 43] has standing to sue regardless of whether he is the registrant of a trademark."  *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 160 (1st Cir. 1977).

Moreover, Defendants rely on a case from this District in which the late Judge David G. Trager found that a plaintiff did not have standing under Section 32 of the Lanham Act to bring a claim for trademark infringement because the relevant contract between the plaintiff and the owner of the trademark "fail[ed] to grant exclusive enforcement rights to plaintiff." *Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F. Supp. 2d 455, 466 (E.D.N.Y. 2008); (*see* Def. Mem. at 12).  However, in that case, Judge Trager actually found that the "plaintiff had standing under Section 43 based on pleadings that false designation of defendants' product is likely to cause plaintiff to suffer a loss in sales." *Krasnyi Oktyabr*, 578 F. Supp. 2d at 466.  Thus, this case relied upon by Defendants actually supports Plaintiffs' position that they had standing to bring Section 43 claims based on what they alleged was unfair competition, even without an assignment of the right to enforce the Pony Malta mark.  It is evident, then, that Plaintiffs' claims were not baseless.  Rather, Plaintiffs had a good faith belief, supported by case law, that they had standing to sue under Section 43 of the Lanham Act.

Defendants also raise Plaintiffs' decision to seek an *ex parte* temporary restraining order at the outset of the case. The court agrees that Plaintiffs' decision to do so appears overly aggressive in retrospect.  Federal Rule of Civil

Procedure 65(b) directs that such an order may only be entered without notice to the adverse party if "specific facts . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  Given the fact that the first state action had been filed several months earlier, without Plaintiffs seeking a temporary restraining order, the court is skeptical that it was necessary for Plaintiffs to seek an immediate prohibition in this case. Nonetheless, the court does not find that Plaintiffs' decision to do so rises to the level of litigating in bad faith.  Based on the distribution agreement Plaintiffs had with Bavaria, it was reasonable for Plaintiffs to believe that Defendants were selling gray market goods in their exclusive territory, which could have damaged Plaintiffs' business.

        Ultimately, when Defendants provided Plaintiffs with a document in November 2020 showing that they had legitimately obtained the Pony Malta beverages from Bavaria for sale in the same territory, Plaintiffs voluntarily dismissed this action. Had Plaintiffs been interested only in harassing Defendants for purposes of a settlement, they could have pressed on, and forced Defendants to fully brief their intended motion to dismiss. Instead, Plaintiffs dropped the case.  That belies bad faith.

Accordingly, Defendants' motion for attorneys' fees is denied.

### III. Plaintiffs' Motion for Attorneys' Fees

Plaintiffs brought a cross-motion for attorneys' fees, arguing that Defendants prolonged the litigation by sitting for months on the evidence that would have resolved this matter sooner. (*See* Pl. Mem. at 27-28.) According to Plaintiffs, Defendants did not provide their evidence showing that individuals at Bavaria were facilitating Defendants' sale of Pony Malta products until November 2020, despite Plaintiffs making clear in July 2020 that such evidence would cause them to rethink the lawsuit if it were provided by Defendants, and an order by Magistrate Judge Roanne L. Mann for the parties to turn over any evidence that may be relevant to settlement prior to a settlement conference in August 2020. (*Id.*) Defendants argue that the actual evidence they ultimately proffered, which were emails between an employee at Bavaria and an employee with Latinfood's distributor, were dated October 2020, and thus could not have been proffered any earlier than that. (*See* Def. Reply at 16-18.)

The same standard that applied to Defendants' motion for attorneys' fees for this action also applies to Plaintiffs' motion. In order to obtain attorneys' fees, Plaintiffs must

point to "clear evidence" that Defendants acted in "bad faith."
*Dow Chem. Pac. Ltd.*, 782 F.2d at 344.

      In response to Defendants' argument that the emails
they proffered were not available until October 2020, Plaintiffs
argue that if Defendants "were secure in their position that
Bavaria always authorized Defendants' sale of Pony Malta goods
in the U.S., then a confirmation from Bavaria in July 2020 or
some other proof would have been in order." (Pl. Reply at 5.)
The court agrees that it would have been preferable for
Defendants to obtain this proof from Bavaria sooner, but it does
not find that Defendants failure to do so was in bad faith.
Plaintiffs have not pointed to any specific discovery
obligations that Defendants violated, nor any specific
affirmative duty Defendants had to obtain any documents that
were not already in its possession.

      Accordingly, Plaintiffs' motion for attorneys' fees
is denied.

**Conclusion**

      For the foregoing reasons, Defendants' motion for
attorneys' fees is DENIED, and Plaintiffs' cross-motion for
attorneys' fees is likewise DENIED. The court declines to
exercise its discretion to award Defendants fees pursuant to
Federal Rule of Civil Procedure 41(d)(1). Further, neither
party has made a sufficient showing of bad faith on the part of

the other party, and so the court declines to depart from the traditional rule that the parties pay their own costs in this action.

**SO ORDERED.**

Dated:     Brooklyn, New York
           April 26, 2021

                                        /s/
                              Hon. Kiyo A. Matsumoto
                              United States District Judge